LUIS MANUEL GONZÁLEZ, ETC., demandante y apelado, *v.* DESTILERÍA ROSES, INC. y THE IMPERIAL GUARANTEE & ACCIDENT INSURANCE CO., demandados y apelantes.

Núm. 10188.—*Sometido:* Junio 7, 1950. *Resuelto:* Junio 23, 1950.

*Wilson P. Colberg,* abogado de las apelantes; *Fernando B. Fornaris* y *Fernando Fornaris, Jr.,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Se trata de un caso de daños y perjuicios. El Tribunal del Distrito de San Juan declaró con lugar la demanda y condenó a las demandadas a satisfacer al demandante la suma de $1,500 más las costas y $200 para honorarios de abogado. No conformes aquéllas apelaron y alegan que el tribunal inferior erró: al resolver que la causa única y próxima del accidente fué la negligencia del conductor del vehículo de la demandada Destilería Roses, Inc. al no obedecer la señal de tránsito que existe en el sitio del accidente, no deteniendo el vehículo a su debido tiempo y violando así el artículo 16 de la Ley núm. 279 de 5 de abril de 1946 ((1) pág. 599); al resolver que la esposa del demandante no había incurrido en negligencia contributoria al cruzar la carretera en la forma en que lo hizo; y al declarar con lugar la demanda.

El tribunal inferior, de acuerdo con la prueba presentada, llegó entre otras, a la siguiente conclusión de hecho en cuanto a la forma en que ocurrió el accidente:

"El accidente en que fué lesionada la esposa del demandante ocurrió, de acuerdo con la prueba del demandante, que es la que nos ha merecido entero crédito, de la manera siguiente:

"El día 5 de febrero de 1948 y de 4:00 a 4:30 P.M., la señora López estaba parada en la acera de la entrada principal de la Universidad de Puerto Rico, esperando a que la luz de tránsito en aquel sitio y que estaba en ese momento en rojo, cambiase a verde para ella cruzar hacia el otro extremo de la avenida para dirigirse a su hogar.

"No bien había caminado normalmente algunos pasos ya con la luz verde, fué súbitamente alcanzada por el automóvil en cuestión y lanzada violentamente contra el pavimento.

"Dicho accidente obviamente se debió única y exclusivamente a la culpa y negligencia del agente de la codemandada Destilería Roses, Inc., al conducir dicho automóvil sin ejercer el debido cuidado y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades en violación del inciso (a) del artículo 17 de la Ley núm. 279 de abril 5 de 1946, Para Reglamentar el Uso de Vehículos de Motor en Puerto Rico y Para Reglamentar el Tránsito en las Carreteras Públicas, y además el no obedecer la señal de tránsito que existe en aquel sitio no deteniendo el vehículo a su debido tiempo teniendo de frente la luz roja que le daba la señal de parar a distancia razonable de dicha luz, violando así el artículo 16 de dicha ley. Véase inciso (n) del artículo 17 de la propia ley.

"Vale la pena hacer constar que el agente de la codemandada Destilería Roses, Inc., Manuel Francisco Vélez, declaró que fué la señora López la que, estando su automóvil completamente parado, vino a chocar contra el vehículo y todo ello mientras la señora López cruzaba de un extremo a otro de la avenida, andando normalmente. A nuestro juicio esta teoría es absurda.

". . . . . . .

"De acuerdo con el conjunto de la prueba, estamos plenamente convencidos de la negligencia de Manuel Francisco Vélez, agente de la codemandada Destilería Roses, Inc., y que la demandante no fué culpable de negligencia o negligencia contributoria alguna.

". . . . . .

"El accidente fué frente a frente a la Universidad de Puerto Rico y frente también al Pensionado Católico, como a las 4:00 ó 4:30 de la tarde. A la Universidad de Puerto Rico asisten miles de estudiantes, aparte de que, a la entrada del pueblo de Río Piedras donde ocurrió dicho accidente, es un sitio muy concu-

rrido. La obligación de los conductores de vehículos en este lugar requiere a juicio del Tribunal, el mayor grado de prudencia, cuidado y circunspección. Así también es el deber de éstos, estar pendientes del cambio de luz que hay en dicho lugar para parar sus vehículos antes de llegar a dicha señal y no esperar a frenar en el mismo sitio donde ésta hace sus cambios. Estas precauciones no las tomó Manuel Francisco Vélez, agente de la codemandada Destilería Roses, Inc. y a nuestro juicio, ésta fué la causa próxima del accidente."

Arguyen las apelantes que la prueba demostró que la esposa del demandante, al cruzar con la luz verde a su favor, no miró hacia ambos lados de la carretera para cerciorarse de que no venía ningún vehículo y que, al no hacerlo, incurrió en negligencia contributoria. Citan al efecto numeros casos tomados aparentemente de las anotaciones contenidas en 75 A.L.R. 970 y 164 A.L.R. 8, tituladas *Liability for accident at crossing as affected by reliance upon or disregard of traffic signals* y *Liability for accident at street or highway intersection as affected by reliance upon or disregard of traffic sign, signal or marking*, respectivamente. Pero es que, de acuerdo con los hechos que la corte consideró probados, los cuales están ampliamente sostenidos por la prueba, la esposa del demandante no bien había caminado normalmente algunos pasos, ya con la luz verde, fué *súbitamente* alcanzada por el automóvil de la demandada. Es cierto que, en alguna ocasión en contestación al contrainterrogatorio de las demandas, ella dijo que no había mirado a uno y otro lado de la carretera, pero ya había explicado y repetido varias veces que al tratar de mirar, lo único que pudo ver fué "un celaje" e inmediatamente sintió el golpe que recibió del automóvil. Veamos cómo explicó ella la situación:

"P. ¿El accidente ocurrió, señora, inmediatamente después que usted terminó de pasar la guagua que estaba parada?

"R. Yo había dado unos cuantos pasos, en esto. . . ¡*cuando salió el celaje que vi!* Fué tan ligero, *que vi cuando el carro me dió y no me di cuenta de nada más.*

"P. ¿Cuando empezó a cruzar después de haber cruzado frente a la guagua había visto algún celaje?

"R. *Seguida de salir de la guagua encontré el celaje;* fué tan ligero, tan de pronto, *que vi* cuando el carro me dió. . .

"P. ¿Eso fué enmediatamente después?

"R. Como un relámpago *vi el celaje, el carro.*

"P. ¿Cuándo empezó a cruzar después de pasar la guagua,. inmediatamente después?

"R. *Inmediatamente, seguido de haber dado unos cuantos pasos.*

"P. ¿Ese celaje que usted vió, lo vió lejos o cerca de usted?'

"R. *Muy cerca, fué una cosa tan súbita que yo el celaje que vi no podía.* . .

"P. ¿Cuando usted esperaba frente a la guagua tenía usted interrumpida la vista de cualquier tráfico que pasara de Río Piedras hacia San Juan? ¿La guagua le interrumpía a usted ver vehículos que vinieran de Río Piedras hacia San Juan?

"R. Fué tan de pronto. . . no podía ver nada más.

". . . . . . .

"P. ¿Mientras pasaba frente a la guagua se fijó si venía algún tráfico (sic) de vehículos, carros, de Río Piedras hacia San Juan?

"R. No me fijé; *si, que vi el celaje ése de·momento; no pude ver.*

"P. ¿El carro ése, señora, usted no podía verlo?

"R. *Es que no pude ver, no me dió tiempo a verlo,* me lanzó ese celaje, el carro, contra el pavimento, *fué una cosa de momento.*

"P. ¿Antes del celaje había mirado usted hacia Río Piedras a ver si venía algún vehículo?

"R. *Sí, señor.* Y la luz para poder ver que no estaba la roja puesta.

"P. ¿Pasando frente a la guagua veía cualquier vehículo que venía de Río Piedras para San Juan, pero ése no lo vió?

"R. *No podía verlo, fué una cosa muy rápida.*

". . . . . . .

"P. ¿La primera vez que lo vió, el celaje, fué cuando usted empezó a cruzar la carretera saliendo frente de la guagua?

"R. Saliendo frente a la guagua.

"P. ¿Inmediatamente que usted salió?

"¿Inmediatamente? Venía caminando tranquila, no tenía por qué precipitarme." (Bastardillas nuestras.)

De manera que, como cuestión de hecho, se probó que la esposa del demandante, al estar cruzando con la luz verde a su favor, miró hacia Río Piedras y lo único que pudo ver fué el celaje del automóvil de la demandada. Si dicho vehículo estaba tan próximo al sitio por donde ella tenía derecho a pasar hasta el extremo que la arrolló, no puede imputársele negligencia contributoria a ella por no haber mirado. No son aplicables, por tanto, los casos citados por las apelantes en los cuales se demostró una situación de hechos distinta a la del presente. Fué la negligencia del conductor del vehículo de la demandada al no detenerlo antes de llegar a la intersección de la vía pública donde estaba encendida la luz roja y arrollar a la esposa del demandante la causa próxima del accidente. Dicha negligencia surge del artículo 16 de la Ley núm. 279 aprobada el 5 de abril de 1946, el cual dispone en lo pertinente, que "Siempre que el tránsito en una intersección esté dirigido por medio de luces de colores, éstas indicarán lo que sigue: . . . *Luz Roja*.—Todo vehículo de motor frente a esta señal, *deberá detenerse antes de entrar* a la intersección de la vía pública." (Bastardillas nuestras.)

Si el chófer de la demandada hubiera manejado su vehículo en la forma que requiere el artículo 17 (a) de la ley antes citada, (¹) tampoco hubiera ocurrido el accidente pues hubiera podido detenerlo antes de entrar a la intersección de la carretera por donde caminaba la esposa del demandante.

*Debe confirmarse la sentencia.*

El Juez Presidente Sr. De Jesús no intervino.

---

(¹) El artículo 17 (a) dispone lo siguiente:

"Las personas que manejan vehículos en los caminos públicos, deberán en todo tiempo ejercer el debido cuidado y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades."